**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCES R. LOPEZ,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>*Acting Commissioner of Social Security*,<br><br>Defendant. | Civil Action No. 17-1073 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court upon the appeal of Frances R. Lopez ("Plaintiff") from the final decision of the Commissioner ("Defendant") upholding Administrative Law Judge ("ALJ") Leonard Olarsch's denial of Plaintiff's application for disability insurance benefits ("DIBs") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). The Court has reviewed the parties' submissions, and, for the following reasons, affirms the ALJ's decision.

**I.     BACKGROUND**[1]

Plaintiff applied for DIBs and SSI on February 25, 2015, alleging disability as of September 9, 2011 due to diabetes, high blood pressure, a history of stroke, asthma, and a heart condition. (R. at 255–64). At the onset of disability, Plaintiff was about 46 years old. (R. at 12). The New Jersey State Agency denied her claims. (R. at 12). At Plaintiff's request, ALJ Olarsch

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 9.

held a hearing on April 2, 2015, at which Plaintiff and Tanya M. Edghill, a vocational expert ("VE"), both testified. (R. at 81–141). Later that month, the ALJ issued a partially favorable decision finding at step five that, prior to March 16, 2015 (when Plaintiff turned 50 years old), Plaintiff could perform a range of unskilled, sedentary work that existed in significant numbers in the national economy and, therefore, Plaintiff was not disabled. (R. at 12–19). The ALJ further found that, as of March 16, 2015, there were no jobs in the national economy that Plaintiff could perform given her age, vocational profile, and residual functional capacity ("RFC"), and therefore she was disabled and entitled to benefits as of that date. (R. at 12–19). Plaintiff appealed the ALJ's decision and, after hearing her objections, the Appeals Council denied her request for review. (R. 1–6). Accordingly, Plaintiff brought the pending action before this Court.

## I. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Additionally, under the Act, disability must be established by objective medical evidence. To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." 42 U.S.C. § 423(d)(5)(A). Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be

2

furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; 42 U.S.C. § 1382(a)(3)(A).

Factors to consider in determining how to weigh evidence from medical sources include: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. *See* 20 C.F.R. § 404.1527(c).

The "substantial evidence standard is a deferential standard of review." *Jones*, 364 F.3d at 503. The ALJ is required to "set forth the reasons for his decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190–91 (3d Cir. 1986)). Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

## II. THE FIVE STEP PROCESS AND THE ALJ'S DECISION

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)–(B) and demonstrates that he is disabled based on an "inability to engage in any

3

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Third Circuit has summarized "the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. § 404.1520" as follows:

> In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
>
> In Step Two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In Step Three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity [("RFC")] to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final step [(Step Five)]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Jones*, 364 F.3d at 118–19 (formatting and emphasis added).

"The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step." *Sykes*, 228 F.3d at 263 (citing *Bowen*, 482 U.S. at 146 n. 5). Neither party bears the burden of proof at step three. *Id.* at 263 n.2.

The ALJ engaged in the above five-step sequential evaluation and found: for Step One, that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, (R. at 14); for Step Two, that Plaintiff has the severe impairments of diabetes mellitus, visual disturbance, asthma, and status post stroke, (R. at 14); for Step Three, that none of Plaintiff's impairments meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Sub. P, App'x. 1, (R. at 15); for RFC, Plaintiff has the RFC to perform sedentary work with occasional postural maneuvers, frequent reaching overhead and gross handling with the left hand, no dangerous machinery, no unprotected heights, frequent near/far visual acuity, and being off-task up to 10% of the time, (R. at 15); for Step Four, Plaintiff has been unable to perform any past relevant work, (R. at 17); and, for Step Five, that, prior to March 16, 2015, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform but, after March 16, 2015, there were no jobs in the national economy that Plaintiff could perform given her age category change to an individual closely approaching advanced age, (R. at 17–18).

At Step Five, the ALJ heard the testimony of a VE. (R. at 119). The ALJ asked the VE what jobs a hypothetical person of Plaintiff's age, education, and work experience could perform. (R. at 122). The ALJ added that such a person could perform sedentary work with occasional postural maneuvers, frequent bilateral overhead reaching, and no exposure to dangerous machinery or unprotected heights. (R. at 122). The VE responded that such a person could perform the jobs of a compact assembler, preparer, and envelope addresser, which existed in significant numbers in the national economy, considering these jobs required frequent, but not constant, use of the upper

5

extremities. (R. at 122, 125). The VE then confirmed that such a hypothetical person could perform these jobs even with the added limitation of being off task up to 10% of the work day. (R. at 138). Based on this testimony as well as other evidence in the record, the ALJ issued a partially favorable decision and concluded that, prior to March 16, 2015, Plaintiff was not disabled, but after March 16, 2015, Plaintiff was disabled. (R. at 18). Plaintiff brought this appeal to challenge the ALJ's findings at Steps Two, Three, Five, and the RFC determination. (*See* ECF No. 15 ("Pl.'s Br.") at 11).

### III. DISCUSSION

#### A. Step Two

At Step Two, Plaintiff argues that the ALJ's decision failed to consider her severe conditions of disc disease, arthritic knee, uncontrolled hypertension, and coronary artery disease. (Pl.'s Br. at 23). With regard to Plaintiff's conditions, the ALJ only found Plaintiff's diabetes mellitus, visual disturbance, asthma, and status post stroke to qualify as severe impairments. (R. at 14). However, even if the ALJ erred with respect to one of the impairments that he found to be non-severe, such error would be harmless as long as he found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in his RFC finding. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) ("Because the ALJ found in Salles' favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). Here, the ALJ found in Plaintiff's favor at Step Two when he ruled that her diabetes mellitus, visual disturbance, asthma, and status post stroke were severe impairments. (R. at 14). The ALJ then went on to engage in the full five step analysis. (R. at 14–19). Accordingly, even if the ALJ erred in not finding Plaintiff's other conditions to be severe

impairments, such error is at most harmless and, therefore, the Court upholds the ALJ's Step Two determination.

**B. Step Three**

Plaintiff attacks the ALJ's Step Three determination on two grounds: (1) the ALJ failed to consider listing 1.04A and (2) the ALJ improperly discredited Plaintiff's subjective pain complaints. (Pl's Br. at 22, 32).

1. The ALJ's Evaluation of Listed Impairments

Plaintiff argues that the ALJ's Step Three determination failed to discuss listing 1.04A (spinal disorder). (Pl.'s Br. at 22). Listing 1.04A requires a disorder of the spine resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression accompanied by sensory or reflex loss. 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.04A. At Step Three, the ALJ is not required to use particular language in conducting his analysis, so long as he or she provides sufficient analysis "to permit meaningful review" by this Court. *Jones*, 364 F.3d at 505; *see also Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Circ. 2008) ("[A]n ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding . . . ."). Furthermore, a plaintiff must show that all, not merely some, of the criteria for a listing have been met in order for the plaintiff to medically equal that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In this case, the ALJ's Step Three determination permitted meaningful review because the ALJ directly discussed Plaintiff's severe impairments of diabetes and the conditions associated with her stroke. (R. at 15). As for listing 1.04A, the Court notes that, although Plaintiff's 2014 MRI of the cervical and lumbar spine showed disc herniation, (R. at 464), the record only shows intermittent complaints of back pain with no evidence of nerve root compression characterized by

7

motor loss, (R. at 360–66). In fact, the medical evidence showed normal muscle strength and tone. (R. at 461). Therefore, the ALJ was not required to discuss listing 1.04A because Plaintiff did not show that all of the criteria for that listing had been met. *See Sullivan*, 493 U.S. at 530.

2. The ALJ's Evaluation of Plaintiff's Subjective Pain Complaints

Plaintiff further argues that the ALJ wrongfully discredited Plaintiff's subjective pain complaints without properly explaining his reasoning. (Pl.'s Br. at 32). The ALJ has discretion to evaluate Plaintiff's credibility and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the alleged symptoms. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony, regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). Here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms but further stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this opinion." (R. at 17).

The ALJ accounted for Plaintiff's complaints and, when he did not account for Plaintiff's complaints, he explained why Plaintiff's complaints were not supported by the medical evidence provided by Plaintiff's treating physicians. (R. at 16). For example, the ALJ found Plaintiff's lower back pain to be partially credible because it was supported by x-rays and MRIs indicated herniation but that the severity of the herniation was minor. (R. at 16). When Plaintiff's complaints of lower back pain were supported by the record, the ALJ accounted for such complaints when he recognized Plaintiff would be limited to sedentary work with occasional postural maneuvers. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir.1986) (holding that the ALJ accorded due weight to assertions of pain when, after refusing to find total disability, he

8

credited them to the extent that the claimant would be able to perform work only at a sedentary exertional level). Based on the record, the ALJ provided substantial evidence in analyzing Plaintiff's subjective pain complaints. Therefore, the Court rejects both of Plaintiff's arguments and affirms the ALJ's Step Three determination.

### C. RFC Finding

The ALJ found that Plaintiff had an RFC of sedentary work with several additional limitations including occasional posture maneuvers, frequent gross handling with the left hand, and being off task up to 10% of the work day. (R. at 15). Without discussion, Plaintiff attacks the ALJ's RFC finding for failing to correspond with her severe impairments. (Pl.'s Br. at 25–30). However, an ALJ's RFC finding need only account for Plaintiff's "credibly-established limitations," which the ALJ did in this case. *See Rutherford*, 399 F.3d at 554. As discussed above, Plaintiff's established impairments are her diabetes mellitus, visual disturbance, asthma, and status post stroke. (R. at 14). The ALJ considered Plaintiff's diabetes mellitus when he limited Plaintiff to sedentary work with only occasional postural maneuvers and frequent overhead reaching. (R. at 15). Furthermore, the ALJ accounted for Plaintiff's history of stroke when he limited Plaintiff to frequent—rather than constant—gross handling with the left hand and no exposure to dangerous machinery or heights. (R. at 15). This finding was consistent with Plaintiff's testimony that she experienced tingling in her left hand but that her right hand was better. (R. at 89, 105). Finally, the ALJ accounted for Plaintiff's vision and asthma when he limited Plaintiff to being off task up to 10% of the work day. (R. at 15). Based on the record, the Court concludes that the ALJ sufficiently accounted for all of Plaintiff's credibly established limitations.

Plaintiff further argues that the ALJ's RFC finding failed to explain the evidence that the ALJ relied upon in reaching his decision. (Pl.'s Br. at 25–30). It is well established that an ALJ

9

is not required "to adhere to any set format for explaining his [or her] analysis so long as there is 'sufficient development of the record and explanation of findings to permit meaningful judicial review.'" *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x. 159, 162–63 (3d Cir. 2008) (quoting *Jones*, 364 F.3d at 505). The Court concludes that the ALJ based his RFC determination on substantial evidence because he relied on the medical information provided in the record. (R. at 15–16). Specifically, the ALJ's RFC finding cited to MRIs and treating physician opinions provided by Plaintiff to conclude that Plaintiff has "a history of poorly-controlled diabetes with neuropathy and hypertension, however with medication and treatment compliance, as well as . . . asthma." (R. at 15). The ALJ relied on this evidence to further conclude that Plaintiff "is insulin dependent and has a history of cardiovascular accident with attendant vision," as well as having overall weakness in her left hand. (R. at 16). Considering the ALJ accounted for Plaintiff's established limitations and based his decision on substantial evidence in the record, the Court affirms the ALJ's RFC finding.

### D. Step Five

At Step Five, the ALJ must consider the plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines ("the Guidelines") to determine if Plaintiff can perform other work in the national economy. 20 CFR § 404 subpt. P, app. 2. Age is a relevant factor for this determination and is divided into three categories: younger person (under age 50), person closely approaching advanced age (age 50 to 54), and persons of advance age (age 55 or older). 20 C.F.R. §§ 404.1563(b), 416.963(b). The regulations further state that the ALJ "will not apply the age categories mechanically in a borderline situation" and instead "if you are within a few days or a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, [the agency] will

consider whether to use the older age category after evaluating the overall impact of all the factors of your case." *Id.*

Plaintiff's final argument is that she falls within a borderline age situation and that the ALJ improperly applied the Guidelines in a mechanical fashion to find that she was not disabled before she reached age 50. (Pl.'s Br. at 34–36). However, consistent with the regulations, the ALJ relied on the VE's testimony, and not the Guidelines, to find that Plaintiff was not disabled prior to reaching age 50. (R. at 17–18). Specifically, the ALJ questioned the VE to determine "the extent to which [Plaintiff's] limitations eroded the unskilled sedentary occupational base." (R. at 18). In response to the ALJ's questions, the VE stated that a hypothetical person of plaintiff's age, education, and work experience could perform the jobs of a compact assembler, preparer, and envelope addresser, which existed in significant numbers in the national economy. (R. at 122). This conclusion included Plaintiff's limitations of performing only sedentary work with occasional postural maneuvers, frequent bilateral overhead reaching, and no exposure to dangerous machinery or unprotected heights.[2] (R. at 122). Therefore, the Court finds that the ALJ's determination was based on the VE's testimony and not a "mechanical application of the Guidelines." In fact, the ALJ only relied on the Guidelines to find in Plaintiff's favor that she was disabled after reaching age 50. (R. at 18). Accordingly, the Court affirms the ALJ's Step Five determination.

---

[2] The Court finds that the VE's testimony provided substantial evidence for the ALJ's determination, because the VE's answers were based on Plaintiff's RFC, which incorporated her established disabilities of diabetes mellitus, visual disturbance, asthma, and status post stroke, as well as being consistent with the Dictionary of Occupational Titles. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."); *see also Rutherford*, 399 F.3d at 554 (stating that an ALJ's hypothetical question need not include "every impairment alleged by a claimant," but only those that are "medically established.").

## IV. CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's decision. An appropriate Order follows this Opinion.

Dated: November 28th, 2017

JOSE L. LINARES
Chief Judge, United States District Court